**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000536
07-OCT-2019
09:03 AM**

NO.CAAP-18-0000536

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

DL, Plaintiff-Appellant, v.
CL, Defendant-Appellee

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 16-1-1014)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Hiraoka, JJ.)

Plaintiff-Appellant DL (**Husband**) appeals from the
Divorce Decree filed on April 26, 2018 (**Divorce Decree**), by the
Family Court of the First Circuit (**Family Court**).[1]  Husband also
challenges other orders, including the Family Court's (1) First
Amended Order Re: Evidentiary Hearing, filed March 16, 2018
(**Amended Order**); (2) First Amended Findings of Fact, Conclusions
of Law and Order Regarding: June 21, 2017 Order Re: Defendant's
Motion for Pre-Decree Relief; March 13, 201[8] Order Re:
Evidentiary Hearing; and March 16, 2018 First Amended Order Re:
Evidentiary Hearing, filed April 26, 2018 (**Amended FOFs and
COLs**); (3) Order Re: Father's Motion to Stay Enforcement of Order
to List the Sacramento Property for Sale (HFCR Rule 62(b)), filed

---

[1]     The Honorable Gale L.F. Ching presided.

June 5, 2018 (**Order Re Stay of Sale**); and (4) Order Re: Father's Motion for Reconsideration and/or Amendment of Orders Pursuant to HFCR Rule 59(E), filed June 7, 2018 (**Order Re Reconsideration**).

This appeal arises out of a divorce action between Husband and Defendant-Appellee CL (**Wife**) and involves the custody and relocation decisions made by the Family Court with respect to the parties' two minor children (**Children**), the parties' property distribution, and child support.

The Intermediate Court of Appeals (**ICA**), by way of Summary Disposition Order, has already affirmed the Divorce Decree with respect to the Family Court's granting of sole physical custody of Children to Wife and permitting the relocation of the Children with Wife to Arizona. See DL v. CL, CAAP-18-0000211, 2019 WL 968052, at *1-*6 (Haw. App. Feb. 28, 2019) (SDO) (**DL I**). In addition, in DL I, the ICA rejected Husband's claim that the court erred in refusing to disqualify Wife's counsel due to an alleged conflict of interest pertaining to a paralegal employed by his firm. Id. at *6-*7.

In this subsequent appeal,[2] Husband raises three points of error and argues that the Family Court erred in: (1) denying Husband's request for reconsideration of the court's child

_____

[2] The notice of appeal in DL I was filed before the Family Court's entry of the Divorce Decree, but in an Order Denying [Wife's] May 9, 2018 Motion to Dismiss Appeal as Untimely, this court concluded that the subsequent entry of the Divorce Decree satisfied this court's jurisdictional requirements. Following the entry of the Divorce Decree and the resolution of various post-judgment motions, Husband then timely filed the instant appeal.

2

custody and relocation decisions in light of developments following the conclusion of trial; (2) its property distribution, by failing to first determine all the parties' assets and debts; and (3) ordering Husband to pay temporary child support while the Children were in Arizona from July 2016 through May 2017, erred in determining the amount to be paid during that time, and erred in determining the amount of child support to be paid by Husband after custody changed post-trial.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve DL's contentions as follows:

(1) Husband argues that the Family Court "erred in awarding physical custody to [Wife] and ordering the Children's relocation to occur nearly six months after the end of trial – considering extra-trial information that [Wife] had left Hawaii and the Children in January 2018 - and thereafter by not granting [Husband's] motion for reconsideration based on new evidence of the Children's best interest showing, *inter alia*, that the Children were thriving under [Husband's] sole care."

The final day of trial was January 9, 2018, and the Family Court entered its Divorce Decree on April 26, 2018. In the Amended Order and Divorce Decree, the Family Court found and concluded that it was in the best interest of the children for Wife to have sole physical custody of the Children and for them

3

to relocate with Wife to Arizona on or after July 1, 2018. Husband's Motion for Reconsideration and/or Amendment of Orders Pursuant to HFCR Rule 59(e)) (**Motion to Reconsider**), filed on May 7, 2018, asked the court to reconsider its rulings regarding custody and relocation in the Divorce Decree based on the fact that Wife left Hawaiʻi eight days after trial and left the Children in Husband's care. In opposition to the Motion to Reconsider, Wife explained that she had to relocate to Arizona because she was "out of options financially" and had to vacate her residence in Hawaiʻi. Wife had a job offer from a company in Arizona that would not extend her offer of employment any longer. In addition, Wife believed, upon the advice of her attorney, that the court would rule upon relocation in January and allow the Children to relocate immediately.

The Hawaiʻi Supreme Court has repeatedly affirmed that "[u]nder HRS § 571-46, the sole issue in a custody determination is the child's best interests, which is an issue of ultimate fact." Fisher v. Fisher, 111 Hawaiʻi 41, 47, 137 P.3d 355, 361 (2006) (citing Maeda v. Maeda, 8 Haw. App. 139, 143, 794 P.2d 268, 270 (1990), which cites In re Jane Doe, 7 Haw. App. 547, 558, 784 P.2d 873, 875 (1989) (stating that "in the child's best interest . . . is an ultimate finding of fact which must be adequately supported by preliminary findings of fact").

Hawaii Revised Statutes (**HRS**) § 571-46(b) (2018) sets forth a non-exclusive list of factors the court must consider in

determining the best interest of children and "the family court is granted broad discretion to weigh the various factors involved, with no single factor being given presumptive paramount weight, in determining whether the standard has been met." Fisher, 111 Hawai'i at 50, 137 P.3d at 364.

> The purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion. Reconsideration is not a device to relitigate old matters or to raise arguments or evidence that could and should have been brought during the earlier proceeding.

Taqupa v. Taqupa, 108 Hawai'i 459, 465, 121 P.3d 924, 930 (App. 2005) (citation omitted).

At trial on December 14, 2017, Wife testified that she had received a job offer from Banner Health as a contract management specialist. Entered into evidence was the email and letter containing the job offer. Wife testified that she had accepted the offer and was set to start at that position on January 2, 2018. Wife testified that she really wanted to take the job and did not want to leave the children with Husband in Hawai'i. At that time, she did not know whether she would actually start on January 2, 2018. Wife testified that if she took the job, she would have to leave the children with Husband full-time until the court allowed relocation.

The Family Court, in making its custody and relocation determinations in the Amended Order, confirmed by the Divorce Decree, knew that Wife would likely need to relocate to Arizona in January to accept a job. The Family Court also knew that the

Children would stay with Husband until the court permitted their relocation to Arizona, which the Family Court set for July 1, 2018. The court was aware of Wife's move prior to July 1, 2018, when it entered its Amended Order and Divorce Decree.

In DL I, this court affirmed the Family Court's custody award and decision to allow relocation. The Family Court's decision was supported by express findings that Husband had committed "family violence" by placing a family member in fear of physical harm under HRS § 571-46(a). 2019 WL 968052 at *1-*4. In addition, we explained:

> Regarding the relocation determination, the Family Court found that it is in the best interest of the children to relocate and reside with CL in Arizona, citing [the custody evaluator's] "credible testimony" that:
>
> a. There remains a rebuttable presumption against [Husband] having custody based on the Court's finding of family violence.
>
> b. Minor Children are most strongly attached to [Wife];
>
> c. Removing Minor Children from [Wife's] care would have immediate and long-term detrimental impacts on there [sic] well-being;
>
> d. Minor Children will benefit greatest being in [Wife's] primary care;
>
> e. [Wife] is the most psychologically stable figure for Minor Children;
>
> f. The history of abuse that created the necessity for [Wife] to flee Hawaii in July 2016 must be considered and should not be held against her in her decision to leave Hawaii;
>
> g. [Wife] has provided an extensive access plan for [Husband] to see Minor Children both in Phoenix and in Hawaii;
>
> h. [Wife] is resilient, organized, and has excellent life management skills, superior to [Husband's] to enable her to provide for herself and children and facilitate their contact with [Husband];

6

i. [Wife] has secured employment in Phoenix, Arizona;

j. Phoenix offers excellent educational, social and extracurricular opportunities for Minor Children; and

k. Phoenix and its surrounding areas hosts an extensive support network for [Wife], including numerous relatives, a supportive church community and many family friends.

Id. at *5. Husband makes a number of arguments that he made previously in DL I contesting the Family Court's finding of family violence and its reliance on the custody evaluator's report and conclusions. Those arguments were considered and rejected in DL I. The court sees no new evidence or arguments to cause the court to reconsider its decision in DL I. See id. at *4-*6.

Regarding Husband's additional arguments, even assuming that the Children did well under Husband's care from January through May 2018 (when Husband filed his Motion to Reconsider), we cannot conclude that the Family Court abused its discretion in denying Husband's Motion to Reconsider with respect to the court's custody and relocation determinations. Wife's move in January to Arizona was consistent with her testimony that she needed to accept the job offer and secure employment in Arizona to support the Children. We find no sufficient basis on which to overturn the court's custody and relocation decisions.

Husband also argues that he was denied due process due to the cumulative effect of substantive and procedural errors throughout the proceedings and because the Family Court failed to schedule trial appropriately. Husband does not specifically

identify which alleged errors cumulatively denied him due process and how. Husband then argues specifically that he was denied due process because the divorce trial was "tried piecemeal over the course of more than five months" with some trial days lasting less than two hours. Husband does not explain how the scheduling of his trial deprived him of due process, other than to state, without support in the record, that this impacted the presentation and processing of the evidence, and he does not provide any authority in support of his position. We conclude that these arguments are without merit.

(2) Pursuant to HRS § 580-47 (2018), "the family court has wide discretion to divide marital partnership property according to what is 'just and equitable' based on the facts and circumstances of each case." Gordon v. Gordon, 135 Hawai'i 340, 348-49, 350 P.3d 1008, 1016-17 (2015) (citation omitted). Hawai'i has developed a framework for the division of marital property based on marital partnership principles to guide family courts in their division of marital property. Id. at 349, 350 P.3d at 1017. There are four steps that must be followed by the family court to establish the value of marital property and then distribute it. First, a family court must find all facts necessary to properly categorize the property into one of five categories and assign the property the relevant net market

values.[3] Id. at 349-50, 350 P.3d at 1017-18. Second, a family court must identify any equitable considerations justifying deviation from an equal distribution between the parties. Id. at 350, 350 P.3d at 1018. Third, a court must decide whether there will be a deviation. Id. Finally, a court must decide the extent of any deviation. Id.

To determine whether equitable considerations justify a deviation from the partnership model, a family court must consider the following: "the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case." Id. at 352-53, 350 P.3d at 1020-21 (citing HRS § 580-47(a)); see also Hamilton v. Hamilton, 138 Hawai'i 185, 206, 378 P.3d 901, 922 (2016).

Husband first argues the Family Court's property distribution is flawed because the court failed to perform the first step of the analysis in not finding the facts necessary to categorize the property and assign the relevant market values.

---

[3] In Gordon, the Hawai'i Supreme Court explained that the categories consist of:

> Category 1 includes the net market value of property separately owned by a spouse on the date of marriage;
> Category 2 includes the increase in the net market value of Category 1 property during the marriage;
> Category 3 includes the net market value of property separately acquired by gift or inheritance during the marriage;
> Category 4 includes the increase in the net market value of Category 3 property during the marriage; and
> Category 5 includes the net market value of the remaining marital estate at the conclusion of the evidentiary part of the trial.

Gordon, 135 Hawai'i at 349, 350 P.3d at 1017 (footnotes and citations omitted).

9

Husband argues that the Amended Order only addressed "certain properties" and that its failure to specifically address all the properties requires us to vacate the court's property division. Husband is correct that the Amended Order only addressed "certain properties", such as the value of the marital residence and a few various item categorizations. However, in the court's Amended FOFs and COLs, the court made specific factual findings regarding the parties' property and debts and incorporated the Property Division Chart (**PDC**) attached to the Amended FOFs and COLs to achieve an equitable distribution. Husband's argument that the court entirely failed to make appropriate factual findings to categorize the property and assign values is unfounded as it ignores the court's Amended FOFs and COLs and the PDC.

Husband further argues that a number of items and attributions thereof in the PDC constitute error, including: (1) Wife's attorneys' fees, (2) misstated value of Husband's checking account, (3) failure to "include Category 3 items that [Wife] conceded [Husband] should keep", (4) attorneys' fees awarded to Husband against Wife by a court in Arizona, (5) the omission of the value of certain vehicles sold during the marriage, (6) funds borrowed by Husband to cover his mediation costs; and (7) fees owed to Dispute Prevention and Resolution. Husband does not support any of the above assertions with any citations to the appellate record. Husband cites no evidence and no previous orders from the Family Court to support his arguments that the

Family Court was wrong in including/omitting these items in/from the PDC. "This court is not obligated to sift through the voluminous record to verify an appellant's inadequately documented contentions." Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 114 n.23, 176 P.3d 91, 113 n.23 (2008) (citation omitted). Upon review, the court is unable to conclude Husband's claims of error with respect to the items listed are meritorious.

Husband next argues that the PDC "fails to include any portion of the loan from [Husband's] father, despite the uncontroverted testimony that a substantial amount of the loan proceeds went toward paying partnership debts and expenses." Husband's reference to the "loan" appears to refer to a loan Husband allegedly received from his father after Wife left with the Children for Arizona, which was alleged to have been expended primarily on Husband's legal fees. In its Amended FOFs and COLs, the Family Court found with respect to the "loan" that:

> 85. [Husband] and [Husband's] Father testified to a debt for loans received by [Husband] from [Husband's] Father, entirely after [Wife] fled to Arizona, and [over] which [Wife] had no input or control, in the total reported about [sic] of over $250,000.

> 86. [Husband] and [Husband's] Father testified that [Husband] was obligated to pay back the loan pursuant to a promissory note which was not produced. The testimony require[d] to validate these loans was not credible.

(Emphasis added).

11

On appeal, Husband does not argue that FOFs 85 and 86 were erroneous. See State v. Kiese, 126 Hawaiʻi 494, 502, 273 P.3d 1180, 1188 (2012) (FOFs not challenged on appeal are binding) (citing Kelly v. 1250 Oceanside Partner, 111 Hawaiʻi 205, 227, 140 P.3d 985, 1007 (2006)). Moreover, "[i]t is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." Fisher, 111 Hawaiʻi at 46, 137 P.3d at 360 (citation and internal quotation marks omitted).[4]

Husband next argues that Wife admitted at trial that he is entitled to receive his "inheritance and proceeds from his investment account (which the court specifically found pre-existed the marriage)."[5] Husband claims that the Family Court denied him his inheritance as separate marital property. Husband in his argument only cites to Wife's testimony regarding the inheritance. Regarding the inheritance, Wife testified:

> [Husband's Counsel]: [D]o you believe [Husband] is entitled to keep his $62,000 in inheritance?
> [Wife]: Yes
> [Husband's Counsel]: Then why isn't it on your PDC?
> [Wife]: I don't know.

The PDC attached to the Family Court's Amended Order includes the $62,000 inheritance under Category 3. Wife's

---

[4]     In addition, Husband's argument that if the alleged amounts given to him by his father were not marital debts then they must be Category 3 gifts is not persuasive. See Hamilton, 138 Hawaiʻi at 204, 378 P.3d at 920 ("Under our case law, expenditures made from a Marital Separate Property account qualify for characterization as Category 3 Marital Partnership Property only where they are in the nature of a contribution to or an investment in Marital Partnership Property.")

[5]     The Family Court in its Amended Order found that the proceeds from the Morgan Stanley account belonged to Husband before the marriage and so it was not included on the PDC to be distributed as marital property.

subjective belief regarding the proper disposition of an item is not dispositive; rather "[t]he partnership model requires the family court to first find all of the facts necessary for categorization of the properties and assignment of the relevant net market values." Gordon, 135 Hawai'i at 350, 350 P.3d at 1018 (internal citations omitted; emphasis added). In the Amended FOFs and COLs, the Family Court found that "[t]he inheritance to [Husband], in the amount of $62,000.00, post separation constituted as a category 3 item." Husband does not argue, cite any authority, or cite any evidence in the record to support a conclusion that the Family Court's decision that the inheritance qualified as a Category 3 item, property acquired by inheritance during the marriage, was in error. Accordingly, we find no error with respect to the classification of the inheritance as a Category 3 item.

Next, Husband argues that the PDC chart was wrong when it assigned "the entire Sacramento sewer conversion lien" to Husband when the court's order stated the debt should be shared by the parties. Again, Husband fails to cite to the record to support his argument. The Family Court in its Amended Order had found that the parties would be equally responsible for the joint marital debt incurred during marriage, including the expenses and costs "relating to the Sacramento Property." The Family Court's Amended FOFs and COLs provide that after the sale of the Sacramento Property and the payment of sales expenses and debts

related thereto, that "[a]ny other existing debts related to the Marital Residence . . . shall be paid first from the rental proceeds received by [Husband] and, for any amount above the rental proceeds, from the proceeds of the sale. Thereafter, the parties shall each be awarded one-half (½) of any remaining net proceeds from the sale of the Marital Residence."

It appears that including the lien on the PDC as the sole debt of Husband (while possibly harmless) is in error. As we conclude below that remand to the Family Court will be necessary, the Family Court will have the opportunity to amend the PDC to appropriately reflect its instructions with respect to the equal sharing of debts associated with the Sacramento Property, if there remains a debt with respect to the lien after the rental and sale proceeds have been applied as set forth in the court's Amended FOFs and COLs.

Regarding the Sacramento Property itself, Husband argues that the Family Court did not properly value the property. Admitted into evidence at trial was a Comparative Market Analysis (**CMA**) performed by the former property management company for the Sacramento Property, which estimated the Sacramento Property to be valued between $550,000 and $600,000. The Family Court initially sustained Husband's objection to the admission of the CMA based on hearsay. However, Husband, a licensed-realtor, testified that he used the CMA in creating his own estimate of the value of the property. The Family Court then found that

14

Husband had opened the door to the admission of the CMA into evidence as he relied on it in forming his own opinion. Husband testified that based on his own analysis, which took into account the CMA, those properties listed on the CMA, and the comparison of the prices listed to other data showing the actual sales prices of those properties, that the Sacramento Property was worth $475,000.

Neither Husband nor Wife has identified whether the CMA is in the voluminous appellate record so that this court can review the CMA. In addition, Husband does not identify anywhere in the record where he or Wife submitted estimates regarding the costs of sale of the Sacramento Property so that the Family Court could have determined the net value of the property. We cannot conclude that the court abused its discretion in the absence of citations to the record showing that these issues were presented to the Family Court in the first instance. See Asato v. Procurement Policy Bd., 132 Hawai'i 333, 354 n.22, 322 P.3d 228, 249 n.22 (2014) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal[.]") (citation omitted); Kamaka, 117 Hawai'i at 114 n.23, 176 P.3d at 113 n.23 ("This court is not obligated to sift through the voluminous record to verify an appellant's inadequately documented contentions.") (citation omitted).

The Family Court found that Wife "credibly testified at trial that her understanding of the current value of the marital

15

residence is between $550,000 and $600,000, based, in part, on [the CMA], prepared by licensed realtors in [the] Sacramento, California area." In the Amended Order, the Family Court found that the residence was valued at $575,000, in the middle of the range suggested by the CMA. The Family Court, by finding Wife to be credible and the CMA to be helpful, implicitly found that Husband's estimate was less credible or persuasive. Under the circumstances presented, we cannot conclude that the Family Court clearly erred or abused its discretion in conjunction with the valuation of the Sacramento Property.

Based upon the other findings of the Family Court with respect to the valuation of the parties marital partnership property and debts, the Family Court determined that without a deviation from the marital partnership model, Wife would be required to pay an equalization payment of $99,895.54. The court found the following "valid and relevant considerations" to deviate from the standard property division:

> (1) [Husband's] alleged category 3 contributions of over $370,552.73 dwarf the net marital estate value of $59,671.06[;]
>
> (2) The equalization payment under the current property division of $99,895.84 would be grossly inequitable in light of [Wife's] negative net value of assets and debts allocated to her[;]
>
> (3) The Court made findings of abuse regarding [Husband] and Minor Children and denied two (2) motions filed by [Wife] requesting the return of Minor Children;
>
> (4) [Husband] has voluntarily refused to work during the pendency of the divorce when he was fully capable and, when he was employed, he was employed far below his full earning capacity;

(5) [Wife] contributed her income towards the Marital Residence during extended periods when [Husband] was not employed prior to their separation;

(6) Husband paid no alimony during the pendency of the divorce case and has not paid alimony during the pendency of the divorce case;

(7) [Husband] has recently received an inheritance of $62,000.00 and anticipates additional inheritance property in the near future;

(8) [Husband] used in excess of 75% of the trial time, resulting in an unnecessary thirteen (13) day trial over the period of six (6) months; and

(9) [Wife] had no prior notice of the alleged loan distributions by [Husband's father] to [Husband] and was [not] provided any information in advance of the amount, purpose or repayment arrangements for the alleged Loan.

In determining whether to deviate from the partnership model, the Family Court "must" consider

> the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case.

Gordon, 135 Hawai'i at 352-53, 350 P.3d at 1020-21 (quoting HRS § 580-47(a)).  "When assessing whether a situation warrants deviation from the partnership model, the family court must 'focus on the present and the future, not the past.'"  Selvage v. Moire, 139 Hawai'i 499, 510, 394 P.3d 729, 740 (2017) (quoting Gordon, 135 Hawai'i at 353, 350 P.2d at 1021.  In addition, "a family court's property division is an abuse of discretion if it considers one spouse's misconduct to be a 'valid and relevant consideration,' instead of considering 'the factors required by [HRS § 580-47].'"  Id. (quoting Gordon, 135 Hawai'i at 347, 350 P.3d at 1015).

17

The Family Court's findings, set forth above, focuses primarily on the past between the parties and Husband's conduct during the marriage, in the separation, and in (making lengthy arguments in) the divorce proceedings. In addition, the Family Court specifically lists "abuse" as a reason for deviation in addition to the other actions taken by Husband which appear to be listed to show misconduct by Husband to justify the deviation. The supreme court has clearly instructed that including a spouse's misconduct as a valid and relevant consideration in deciding whether to deviate from the partnership model is an abuse of discretion by the Family Court. See id., at 511, 394 P.3d at 741 (the family court "cannot punish a party for misconduct when deciding whether deviation from the partnership model is appropriate"). In addition to the respective merits of the parties, the court is required to focus on the current and future economic needs of the parties in deciding whether a deviation is equitable. Gordon, 135 Hawaiʻi at 353, 350 P.3d at 1021 ("deviation from the partnership model should be based primarily on the current and future economic needs of the parties rather than on punishing one party for financial misconduct") (emphasis added). The Family Court's findings do not specifically address the future respective economic needs and abilities of the parties.

We conclude that the Family Court abused its discretion in deviating from the partnership model based on the findings in

18

the Amended FOFs and COLs. The appropriate remedy is to remand to the Family Court for a re-determination of whether and to what extent it will exercise its discretion in deviating from the partnership model, and to enter appropriate findings on the record. See Selvage, 139 Hawaiʻi at 511, 394 P.3d at 741 (remanding to family court to determine whether and to what extent it will exercise discretion to deviate from partnership model and to enter appropriate findings on the record).

(3) "The Hawaiʻi Child Support Guidelines [(**Guidelines**)] are promulgated by the Family Courts of Hawaiʻi and are used by the family courts to determine monthly child support." P.O. v. J.S., 139 Hawaiʻi 434, 441, 393 P.3d 986, 993 (2017) (citing HRS § 576D-7(a) (2006)). "The Guidelines contain substantive rules and principles relating to calculation of support and include various appendices; Appendix A includes the "Child Support Guidelines Worksheet [(**CSGW**)]" . . . which is used to determine the initial calculation of a parent's monthly support obligation." Id. at 441-42, 393 P.3d at 993-94 (citation omitted). The Family Court must utilize the Guidelines when establishing child support except in exceptional circumstances. Id. at 443, 393 P.3d at 995.

Regarding "imputed income", the supreme court has explained:

> [I]n determining gross income for calculation of child support, the Guidelines permit the family court to use "imputed income" when "a parent is not employed full-time or is employed below full earning capacity." Haw. State Judiciary, 2010 Hawaiʻi Child Support Guidelines 23. When the parent is unemployed or underemployed for reasons other

than caring for the child, the parent's income may be determined and imputed by the family court according to the parent's "income capacity in the local job market" and "considering both the reasonable needs of the child(ren) and the reasonable work aspirations of the parent." Id.

Id. at 442 n.16, 393 P.3d at 994 n.16; see also RC v. MC, CAAP-15-0000592, 2019 WL 338344, at *6 (Haw. App. Jan. 28, 2019) (Amended mem. op.) (explaining imputed income in Child Support Guidelines). When the court does impute income to a parent, it is necessary for the court to make findings to explain why income was imputed. See I.S. v. P.S., No. 30179, CAAP-10-0000082, 2013 WL 4458889, at *7 (Haw. App. Aug. 21, 2013) (mem. op.) (remanding issue of husband's child support payments because family court made no findings as to why it imputed a certain amount of income to husband, did not indicate the reasons for husband's limitation to full-time employment or full earning capacity, and did not suggest or find that husband was purposely not seeking work).

In its Order Granting in Part and Denying in Part Motion and Declaration for Pre-Decree Relief, Filed October 21, 2016, filed December 16, 2016 (**Pre-Decree Order**), the Family Court found that Husband is an attorney who is mentally and physically able to seek employment. The Family Court was not persuaded that Husband should be ordered to pay $77.00 per child nor wait until he becomes employed to pay child support, as argued by Husband. Accepted into evidence at the hearing on the Pre-Decree Order was Wife's proposed CSGW[6] and documents

---

[6] Husband states that the exhibit was not admitted at trial. The record on appeal shows the exhibit was admitted into evidence at the hearing on the Pre-Decree Order. Husband does not cite anywhere in the record to show that the exhibit was refused at trial. Nor does Husband provide argument on
(continued...)

explaining how Wife arrived at her proposed imputed income for Husband. The supporting documents were from a website utilized by Wife that calculated the median income for an attorney practicing in Honolulu and also included documentation explaining the website's methodology. Wife proposed that the court impute income for Husband in the amount of $10,471 per month, which the court accepted. This amount was used in the CSGW to calculate Husband's child support.

In its Amended FOFs and COLs, the Family Court made the following findings with respect to Husband's employment and income:

> 4.    Both Parties are currently employable and employed.
>
> . . . .
>
> 39.    It is also undisputed that during the period [Wife] was in Arizona, [Husband] remained unemployed.
>
> . . . .
>
> 67.    [Husband] presented no evidence to verify his ability to survive financially in Hawaii at his current employment without the support of his parents and no independent confirmation of his income.
>
> 68.    [Husband] presented no evidence at trial to confirm his current regular monthly income.
>
> 69.    The credible evidence at trial shows [Wife's] monthly income at Banner Health is $5,709.60, and [Husband's] only income value remains the income [imputed] during the pre-decree process at $10,471.00.
>
> . . . .

---

6(...continued)
appeal as to why the exhibit should have not been admitted. Therefore, the claim of error is waived. See Kakinami v. Kakinami, 127 Hawai'i 126, 144 n.16, 276 P.3d 695, 713 n.16 (2012) (citing In re Guardianship of Carlsmith, 113 Hawai'i 236, 246, 151 P.3d 717, 727 (2007) (noting that this court may "disregard a particular contention if the appellant makes no discernible argument in support of that position") (internal quotation marks and brackets omitted)).

71. Based on the credible testimony at trial, [Husband's] current employment is in a family law law [sic] firm, an area of law he did not previously practice in.

72. [Husband] testified at trial he did not seek employment in the area of civil litigation, an area he practiced in intermittently since his graduation from law school.

The Family Court in its COL regarding child support found "[b]ased on this Court's award of custody and the established income of [Wife] and imputed income of [Husband] based on the absence of any verifiable income at trial, [Husband] shall to pay [Wife] child support in the amount of $2,873.00 per month."

Under the circumstances of this case, we conclude that the Family Court did not abuse its discretion in imputing an income of $10,471 per month to Husband and in using the CSGW to calculate that Husband should pay child support in the amount of $2,873.00. The Family Court found that Husband and Wife moved from California to Hawai'i based in part on Husband's depression and anger issues with the understanding that Husband's family would provide financial support. It was undisputed that for extended periods after moving to Hawai'i Husband remained unemployed. The court found that while Husband was then employed at a family law firm, it was not an area in which he had practiced before and he did not seek employment in civil litigation, which was the area in which he had previously practiced. Husband failed to present evidence to verify that he could survive financially at his current employment without the

help of his parents and he failed to provide confirmation of his income. It is reasonable to infer from the court's findings that the court considered Husband to be purposefully underemployed. The court did not abuse its discretion in reaffirming its decision to impute income to Husband based on the evidence in the record regarding the median salary for an attorney in Honolulu.[7]

Although Husband challenges the award of any child support to Wife while she was in Arizona, no argument with respect thereto (other than the amount of the child support discussed above) is made in Husband's opening brief. That claim is abandoned. See Kakinami, 127 Hawai'i at 144 n.16, 276 P.3d at 713 n.16.

For these reasons, we conclude that Husband's third point of error has no merit.

Accordingly, we conclude that the Family Court erred in deviating from the partnership model on the bases provided above, but did not otherwise err in the challenged orders. Therefore, we vacate in part the Family Court's Divorce Decree and Amended FOFs and COLs and remand this case to the Family Court for determination of whether and to what extent to exercise its discretion in deviating from the partnership model, and to enter appropriate findings in the record.

---

[7] Husband argues the Family Court erred in considering the "imputed income" "law of the case." The Family Court made no such finding. The court merely stated that in light of the lack of any other credible evidence from Husband regarding his income, the court reaffirmed its previous finding in the Pre-Decree Order the amount of imputed income.

23

NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

DATED: Honolulu, Hawaiʻi, October 7, 2019.

On the briefs:

Rebecca A. Copeland,
for Plaintiff-Appellant.

CL
Defendant-Appellee, *Pro Se*.

Presiding Judge

Associate Judge

Associate Judge